IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FRANK X. VINCI,
    Plaintiff,

vs.                                          Case No. 3:10cv173/MCR/EMT

RIVER JUNCTION WORK CAMP, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This cause is before the court on Plaintiff's fourth amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 51).  Leave to proceed in forma pauperis has been granted (doc. 21).

    Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true,

and only reasonable inferences are drawn in favor of the plaintiff. *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[1] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted). Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1022 (11th Cir. 2001). Upon review of the fourth amended complaint in the instant case, the court concludes that dismissal of some of Plaintiff's claims is warranted.

I.  RELEVANT ALLEGATIONS

Plaintiff is currently incarcerated at Walton Correctional Institution (doc. 51 at 2).[2] He names ten Defendants in this action, all of whom are employees of the Florida Department of Corrections ("FDOC") at various institutions: Doctor Cherry, River Junction Work Camp ("RJWC"); Lieutenant Barbara Smith, RJWC; Lieutenant McClamma, RJWC; Correctional Officer

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

John Doe (unidentified) #1, RJWC; Lieutenant John Doe (unidentified) #2, RJWC; Nurse Cowherd, Sr., RJWC; Sergeant Sims, Apalachee Correctional Institution ("ACI"); Correctional Officer John Doe (unidentified) #3, ACI; Nurse Cowherd, Jr., ACI; and Warden Samuel Culpepper, formerly at RJWC and presently at Walton Correctional Institution ("WCI") (*id.* at 1–3). Plaintiff sues Defendants in their individual capacities for allegedly violating his First and Eighth Amendment rights (*id.* at 13).

Plaintiff states on June 13, 2008, when he was housed at RJWC, Inmate Gregory Lyons hit him in the face with a lock while he was sleeping (doc. 51 at 6–13). He states Defendant Officer John Doe #1 was sleeping on the job when the attack occurred (*id.* at 6). Plaintiff states Defendant Lieutenant John Doe #2 interviewed him after the attack, but did not investigate Plaintiff's claim that John Doe #1 was sleeping during the attack (*id.* at 6–7). Plaintiff states he was taken from RJWC to the medical unit at ACI and examined by Defendant Nurse Cowherd, Jr. (*id.* at 7). Plaintiff states he had a laceration near his eye and requested stitches (*id.*). He states Nurse Cowherd admitted him to the infirmary for two days and placed a band-aid on the laceration, but did not give him a CAT scan, x-ray, or stitches (*id.*).

Plaintiff states he was returned to RJWC on June 16, 2008 (doc. 51 at 7). Plaintiff states that upon his return to RJWC, he was interviewed by Defendant McClamma regarding the attack (*id.* at 7–8). Plaintiff states he told McClamma that the attack occurred while John Doe #1 was sleeping, and McClamma responded, "Don't you ever say my officer was sleeping on the job again, inmate" (*id.* at 8). Plaintiff states he asked McClamma when he would receive stitches for his injury, and McClamma responded that Plaintiff was being placed in confinement and would receive a pre-confinement medical examination (*id.*). After a pre-confinement medical examination, Plaintiff was transported back to ACI for placement in confinement (*see* doc. 18 at 10).

Plaintiff states while he was in confinement at ACI, he contacted Defendant Lieutenant Smith to discuss Inmate Lyons's attack (*see* doc. 18 at 10). On June 24, 2008, Defendant Smith interviewed him in a small room in the confinement unit (*id.*). Plaintiff states he told Smith that John Doe #1 was sleeping on the job when the attack occurred (doc. 51 at 10). Defendant Smith returned Plaintiff to his confinement cell (*id.*). An hour later, Defendants Sergeant Sims and Officer John Doe #3 ordered Plaintiff and his cellmate to "cuff up" (*id.* at 10). Plaintiff's cellmate was

removed from the cell (*id.*). Defendant Sims told Plaintiff, "No one was sleeping the night you were attacked, do you hear me?" (*id.*). Plaintiff told Sims he would not lie for John Doe #1, Defendant Smith, Defendant McClamma, or Warden Culpepper (*id.*). Plaintiff states Defendant Sims spun him around and threw him against the wall and to the floor (*id.*). He states John Doe #3 put his foot on Plaintiff's hip to hold him down, while Sims smashed Plaintiff's face with his boot (*id.*). Plaintiff states his sinus cavity was crushed, and he had to have a metal plate implanted in his face as a result of Defendants Sims and John Doe #3's conduct (*id.*). Plaintiff states after the beating, he was placed in a locked and gated shower stall without medical treatment (*id.* at 11). He states Warden Culpepper walked through the confinement unit to make regular rounds, and Plaintiff yelled to him that he had been beaten by Sims and John Doe #3 (*id.*). He states Culpepper responded, "What did you do Stupid? I ain't got nothing to say to you" (*id.*). Plaintiff alleges Culpepper did not investigate his allegations of brutality or seek medical attention for his injuries (*id.* at 11–12). Plaintiff states he was left in the shower stall for six hours and defecated on himself because his requests to use the bathroom were ignored (*id.* at 11). He also states he declared a medical emergency, but Warden Culpepper, Sergeant Sims, and Officer John Doe #3 ignored his requests (*id.* at 12). Plaintiff states he eventually received reconstructive surgery for his injuries, but Defendants Dr. Cherry, Nurse Cowherd, Sr., and Warden Culpepper delayed surgery for 8 1/2 weeks (*id.* at 10–12). He states during that time he was not treated for his injuries, even though he was in pain (*id.* at 12).

Plaintiff claims that Officer John Doe #1 violated the Eighth Amendment by sleeping on the job when Inmate Lyons attacked him. He contends Lieutenant John Doe #2 and Lieutenant Smith "covered up" and failed to investigate his allegation that John Doe #1 was asleep. Plaintiff contends Nurse Cowherd, Jr. was deliberately indifferent to his medical needs by providing inadequate treatment at ACI following the attack by Inmate Lyons. He contends Dr. Cherry, Nurse Cowherd Sr., Nurse Cowherd, Jr., Lieutenant McClamma, and Warden Culpepper were deliberately indifferent to his medical needs after the attack. He contends John Doe #2 and Lieutenant McClamma retaliated against him for reporting John Doe #1's conduct by failing to investigate the conduct and placing him in confinement, respectively. Plaintiff claims that Sergeant Sims and John Doe #3 engaged in excessive force. He claims that Defendants Dr. Cherry, Nurse Cowherd, Sr.,

Nurse Cowherd, Jr., Sergeant Sims, John Doe #3, and Warden Culpepper were deliberately indifferent to his medical needs following the use of force.

As relief, Plaintiff seeks compensatory, punitive, and nominal damages in an amount not less than $1,000,000.00 (doc. 51 at 13).

II.     ANALYSIS

    A.     Eighth Amendment Claim–Failure to Protect from Attack by Inmate Lyons

The court liberally construes Plaintiff's allegations as asserting an Eighth Amendment claim against Correctional Officer John Doe #1 for sleeping while Inmate Gregory Lyons attacked Plaintiff. Plaintiff also appears to claim that Lieutenant John Doe #2 and Lieutenant Smith are liable for the alleged constitutional violation, because they "covered up" and failed to investigate Officer John Doe #1's conduct.

It is true that the Constitution imposes upon state "officials the duty to 'provide humane conditions of confinement.'" Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994); *see also* Hudson v. Palmer, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 3200, 82 L. Ed.2 d 393 (1984).  And in guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833; Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for [state] officials responsible for the victim's safety." Farmer, 511 U.S. at 834.  Thus, to state a viable failure-to-protect claim, Plaintiff must make two showings. First, he must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm."[3] Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)).  Second, he must show that Defendant had a "culpable state of mind" (was deliberately indifferent) in that he knew of and disregarded "an excessive risk to inmate health or safety." *Id.*, 511 U.S. at 834.  Put another way, Plaintiff must show that a named Defendant was aware of facts showing that Plaintiff was at a substantial risk of harm, and despite knowing of the risk, Defendant did not take reasonable steps to protect Plaintiff.  The known risk

---

[3] The Court did not address the question of "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3.

of injury must be "a strong likelihood, rather than a mere possibility" before a guard's failure to act can constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation omitted). Furthermore, merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Id.*

In the instant case, despite the court's advising Plaintiff of the applicable legal standard (*see* doc. 26), he has still failed to allege facts suggesting Officer John Doe #1 actually knew that Inmate Lyons posed a substantial risk to Plaintiff's safety. Further, as Plaintiff was previously advised, the fact that Doe may have been asleep when the attack occurred suggests at most negligent conduct by Doe; it does not suggest a level of conscious indifference necessary to state an Eighth Amendment claim. Therefore, Plaintiff has failed to state an Eighth Amendment claim against Officer John Doe #1. In light of this conclusion, Plaintiff's suggestion that Lieutenant John Doe #2 and Lieutenant Smith are liable for the alleged constitutional violation, because they "covered up" and failed to investigate Officer John Doe #1's conduct, also fails to state an Eighth Amendment claim.

B.      Eighth Amendment Claim–Deliberate Indifference to Medical Needs

It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991). Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 1505 (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

A delay in providing medical treatment can constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 104–05. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." <u>Townsend v. Jefferson County</u>, 582 F.3d 1252, 1259 (11th Cir. 2009). The court previously advised Plaintiff of this standard (*see* doc. 38).

        1.     Nurse Cowherd, Jr.

Plaintiff claims that Nurse Cowherd, Jr. was deliberately indifferent to his medical needs with regard to the injury to his eye resulting from Inmate Lyon's attack. He states Nurse Cowherd, Jr. attended to his injury at ACI. He states she described his injury in her report, titled "Abrasion/Laceration Assessment," as a 1 1/2" laceration near his right orbital area, with mild swelling and discoloration, and noted his teeth and tongue were intact (*see* doc. 31 at 5). He states Nurse Cowherd, Jr. cleaned his wound, placed a bandage on the laceration, and maintained him in the ACI infirmary for two days (doc. 18 at 9; doc. 51 at 7). Plaintiff states just prior to his release from the ACI infirmary on June 16th, his medical record indicated he was to receive a follow-up visit with Dr. Cherry at RJWC that week, and that Nurse Cowherd was notified of this (doc. 31 at 6). Plaintiff argues Nurse Cowherd Jr.'s treatment at ACI was unconstitutionally inadequate, because she never ordered a CAT scan or x-rays, did not give him stitches, and did not have him examined by a doctor.

Plaintiff's dispute over the adequacy of Nurse Cowherd Jr.'s treatment does not state an Eighth Amendment claim. Although he alleges Nurse Cowherd Jr. knew he faced a substantial risk of being blind or having a serious head injury, the facts do not suggest he exhibited symptoms of either. At the time she examined him, he exhibited a 1 1/2" laceration with mild swelling and discoloration. Cleaning and bandaging the laceration, maintaining him in the infirmary for two days, and scheduling a follow-up visit with a doctor does not suggest deliberate disregard of Plaintiff's medical needs. Therefore, his Eighth Amendment claim against Nurse Cowherd, Jr. should be dismissed.

        2.     Lieutenant McClamma

Plaintiff also failed to state a plausible claim of deliberate indifference to medical needs by Defendant Lieutenant McClamma. Plaintiff states he asked McClamma during his interview at RJWC on June 16, 2008, why he had not been seen by a doctor at ACI or received stitches, a CAT scan, or x-rays (doc. 51 at 7–8). He states McClamma responded, "Don't tell me how to do my job," and then interviewed Plaintiff about how he was injured on June 13 (*id.* at 8). Plaintiff states he again asked McClamma when he would receive stitches, and McClamma responded that Plaintiff was going to confinement and would see a nurse for a pre-confinement exam (*id.*).

Plaintiff's allegations suggest McClamma subjectively believed that any necessary medical treatment would be provided to Plaintiff at his pre-confinement medical exam. This response to Plaintiff's request for medical treatment does not suggest deliberate indifference. Therefore, Plaintiff's allegations fail to state a plausible Eighth Amendment claim against Lieutenant McClamma.

                3.      Dr. Cherry and Nurse Cowherd, Sr.

Plaintiff's allegations also fail to state a plausible Eighth Amendment claim against Dr. Cherry and Nurse Cowherd, Sr., both of whom worked at RJWC. Plaintiff alleges he never received a follow-up examination for his eye injury with Dr. Cherry upon his transfer from the ACI infirmary to RJWC, on June 16, 2008. However, Plaintiff admits he was almost immediately returned to ACI from RJWC for placement in confinement (*see* doc. 18 at 10; doc. 31 at 6), and he stayed in confinement at ACI until June 30, 2008 (doc. 31 at 6–7). These facts do not suggest Dr. Cherry was aware of Plaintiff's need for medical care, let alone that his failure to treat him was the result of deliberate indifference.

Plaintiff alleges Nurse Cowherd, Sr. conducted his pre-confinement examination on June 16, 2008, and he told her he needed to see Dr. Cherry because his eye was very swollen and he could see only "a cloud and shadows" out of his right eye (*see* doc. 45 at 8). Plaintiff alleges Nurse Cowherd, Sr. responded, "Not at this time. You're going to confinement" (*id.*). In light Plaintiff's allegation in a previous complaint that nurses made daily rounds in the confinement unit (*see* doc. 45 at 9), Nurse Cowherd Sr.'s sending him to confinement without first seeing Dr. Cherry does not suggest she subjectively knew that her failure to immediately facilitate an examination by Dr. Cherry posed a substantial risk of serious harm to Plaintiff's health.

Case No: 3:10cv173/MCR/EMT

Plaintiff states he was returned to RJWC on June 30, 2008 (doc. 31 at 6–7; doc. 51 at 11). He states he was seen by Nurse Cowherd, Sr. on July 22, 2008, at which time she made notes regarding his complaints and condition, and referred him to Dr. Cherry (doc. 31 at 7). Plaintiff states he was examined by Dr. Cherry two days later, on July 24, 2008 (*see* doc. 18 at 12). Plaintiff states he again saw Nurse Cowherd, Sr. on August 4, 2008, and she again referred him to Dr. Cherry (*id.*). Plaintiff was examined by Dr. Cherry later that day, and Dr. Cherry referred him to the Reception and Medical Center ("RMC") for a CAT scan (*id.*). Plaintiff received the CAT scan on August 24, 2008 (*see* doc. 18 at 12). On September 16, 2008, a specialist recommended surgery, which Plaintiff received on September 23, 2008 (doc. 18 at 12; doc. 51 at 12).

Plaintiff has not alleged facts suggesting that between his return to RJWC on June 30, 2008, and his examination by Nurse Cowherd, Sr. on July 22, 2008, either Nurse Cowherd or Dr. Cherry knew he required medical treatment. Further, when Nurse Cowherd became aware of his need for treatment on July 22, both she and Dr. Cherry responded in a manner that resulted in his being referred for a CAT scan within two weeks. Plaintiff received the CAT scan, he received attention from a specialist, and he received the treatment recommended by the specialist. These facts do not suggest Dr. Cherry or Nurse Cowherd, Sr. were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff's Eighth Amendment claims against Dr. Cherry and Nurse Cowherd, Sr. should be dismissed.

   C.  Eighth Amendment Claim–Excessive Force

Plaintiff's allegations of excessive force by Sergeant Sims and Officer John Doe #3 state a plausible Eighth Amendment claim. Therefore, his Eighth Amendment claim against those two Defendants should be permitted to proceed. Additionally, Plaintiff has included sufficient allegations to state an Eighth Amendment claim against these Defendants for failing to provide medical attention for Plaintiff's injuries resulting from the use of force. Therefore, those claims should be permitted to proceed as well.

   D.  First Amendment Claim–Retaliation

Plaintiff contends Defendant Lieutenant John Doe #2 retaliated against him by failing to investigate his allegation that Officer John Doe #1 was asleep during Inmate Lyons's attack (doc. 51 at 6–7). It is well established that the First Amendment forbids prison officials from retaliating

against prisoners for exercising the right of free speech.  *See* Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592–93, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).  "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006).  To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See* Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)); Cummings v. Harrison, 695 F. Supp. 2d 1263, 1274–75 (N.D. Fla. 2010).  A prisoner's filing of a grievance concerning the conditions of his imprisonment is protected speech under the First Amendment.  *See* Douglas, 535 F.3d at 1321 (quoting Boxer X, 437 F.3d at 1112).  As to the second element, the Eleventh Circuit employs a purely objective standard:  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Bennett, 423 F.3d at 1253.  In adopting this objective standard, the Eleventh Circuit expressly rejected a subjective "actual chill" standard, that is, a plaintiff suffers adverse action only if the retaliatory conduct actually chilled the exercise of his First Amendment rights.  *Id.* at 1250–54.  The third element, whether there was a causal connection between the retaliatory acts and the adverse effect on the speech, "asks whether the defendants were subjectively motivated to discipline because [the prisoner] complained of the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008).

In the instant case, Plaintiff's allegation that Lieutenant John Doe #2 failed to investigate his allegation that John Doe #1 was asleep during the attack does not plausibly suggest "adverse action" under the First Amendment standard.  Therefore, his First Amendment claim against Lieutenant John Doe #2 should be dismissed.  Plaintiff has however stated a plausible First Amendment claim against Lieutenant McClamma, based upon his allegation that McClamma placed him in

confinement on June 16, 2008, in retaliation for complaining that Officer John Doe #1 was asleep during the attack. Plaintiff has also stated a plausible retaliation claim against Sergeant Sims and Officer John Doe #3, based upon his allegation that they physically harmed him in retaliation for complaining that Officer John Doe #1 was asleep. Therefore, the retaliation claims against those three Defendants should be permitted to proceed.

> E. Supervisory Liability–Warden Culpepper

Finally, Plaintiff has failed to state a basis for liability as to Warden Culpepper. Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Id. (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Id. (internal quotation marks and citations omitted).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne v. Jarvis, 197 F.3d 1098, 1106 (11th Cir. 1999), cert. denied, 120 S.Ct. 1974, 146 L.Ed.2d 804 (2000); Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. See Harris

v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996).  Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

Plaintiff's verified factual allegations in the instant complaint concerning Warden Culpepper's involvement in the alleged constitutional violations contradict his verified factual allegations in his previous complaints.  In the instant complaint, Plaintiff states Warden Culpepper ignored him when he yelled to him from the shower stall that he had been beaten by Sergeant Sims and Officer John Doe #3 and required medical attention (doc. 51 at 9–12).  However, in a previous complaint, Plaintiff stated the beating by Sims and John Doe #3 occurred after Sims forced him to sit in the shower stall for hours, during which time he yelled to Culpepper (*see* doc. 45 at 10–11, 16–17).  Plaintiff's previous complaint also alleged only that he told Culpepper he needed to speak with him; he did not allege he told Culpepper he had been beaten (*id.* at 10–11).  Factual allegations in a complaint may be deemed "clearly baseless" if they are contradicted by other allegations in the complaint.  *See* Battle v. Central State Hosp., 898 F.2d 126, 130 n.3 (11th Cir. 1990); *see also* 71 C.J.S. Pleading § 87 (updated September 2011) (where there are contradictory or inconsistent factual allegations in a pleading, the conflict is to be resolved against the pleader; this rule applies even in cases where a liberal rule of construction applies).  In light of Plaintiff's contradictory factual allegations, the undersigned concludes Plaintiff failed to plausibly show that Warden Culpepper was subjectively aware that Plaintiff had been beaten and required medical attention.  Therefore, he failed to state an Eighth Amendment claim against this Defendant.

III.   CONCLUSION

The facts as pleaded do not state a claim for relief that is plausible on its face against Dr. Cherry, Lieutenant Barbara Smith, Officer John Doe #1, Lieutenant John Doe #2, Nurse Cowherd, Jr., Nurse Cowherd, Sr., or Warden Samuel Culpepper.  Therefore, Plaintiff's claims against those Defendants should be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Likewise, Plaintiff failed to state a plausible Eighth Amendment claim against Lieutenant McClamma for deliberate indifference to serious medical needs.  Therefore, that claim should be

dismissed as well.  Plaintiff has, however, stated plausible First Amendment retaliation claims against Lieutenant McClamma, Sergeant Sims, and Officer John Doe #3.  He has also stated plausible Eighth Amendment claims against Sergeant Sims and Officer John Doe #3 for excessive force and deliberate indifference to serious medical needs.  Therefore, those claims against those three Defendants should be permitted to proceed.

Accordingly, it respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Dr. Cherry, Lieutenant Barbara Smith, Officer John Doe #1, Lieutenant John Doe #2, Nurse Cowherd, Jr., Nurse Cowherd, Sr., and Warden Samuel Culpepper be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

2. That Plaintiff's Eighth Amendment claim against Lieutenant McClamma for deliberate indifference to serious medical needs be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

3. That Defendants Dr. Cherry, Lieutenant Barbara Smith, Officer John Doe #1, Lieutenant John Doe #2, Nurse Cowherd, Jr., Nurse Cowherd, Sr., and Warden Samuel Culpepper be **DISMISSED** from this action.

4. That this matter be referred to the assigned magistrate judge for further proceedings on the following claims:

    a. Plaintiff's First Amendment retaliation claims against Lieutenant McClamma, Sergeant Sims, and Officer John Doe #3;

    b. Plaintiff's Eighth Amendment claims against Sergeant Sims and Officer John Doe #3 for excessive force; and

    c. Plaintiff's Eighth Amendment claims against Sergeant Sims and Officer John Doe #3 for deliberate indifference to serious medical needs.

At Pensacola, Florida this 4th day of November 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No: 3:10cv173/MCR/EMT

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**